UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Wells Fargo Clearing Services, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>Helen Caldwell,<br><br>*Defendant*. | No. 25 CV 1961<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Petitioner Wells Fargo Clearing Services, LLC initiated this action to confirm an arbitration award entered in its favor against Respondent Helen Caldwell. [Dkt. 1]. Caldwell filed a motion in opposition, alleging in part that she never agreed to arbitration with Wells Fargo in the first place. Because the court may only confirm an arbitration award after finding that the parties indeed agreed to arbitrating the dispute, the court defers ruling on the petition pending limited discovery and supplemental briefing.

**I.   Background**

Caldwell began working for Wells Fargo as a representative in November 2021. [Dkt. 15 at 1].[1] The company terminated her on August 29, 2022. [Dkt. 1 at 3].

Wells Fargo asserts that the parties voluntarily entered into a written Promissory Note on Caldwell's first day of employment. [Dkt. 1-1 at ¶¶ 6–7]. Pursuant to the Note's terms, Wells Fargo loaned Caldwell $343,500 which she agreed to repay in full at an interest rate of 1.84% per annum. [*Id.* at ¶ 8]. Wells Fargo provided a copy of the Promissory Note and Loan Payment Authorization form as evidence of the parties' agreement, both electronically signed with the name "Helen Caldwell," dated November 10, 2021. [*Id.* at 9–15]. The documents authorized Wells Fargo to deduct $3,340.19 "loan payments" each month from Caldwell's net incentive pay, with the final balance of the loan due in October 2031. [*Id.* at 9, 15]. If her employment with Wells Fargo terminated during the loan repayment period, the Note authorized Wells Fargo to declare the unpaid balance immediately due. [*Id.* at 9]. As further support of the loan agreement, Wells Fargo offered a document entitled "Promissory Note Analysis," which details note-related transactions that appear to

---

[1]   Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

corroborate a payment schedule consistent with the Promissory Note and Loan Payment Authorization form. [*Id.* at 17].

Relevant here, the Promissory Note included an arbitration clause requiring the parties to resolve disputes concerning the Note in binding arbitration pursuant to the rules of the Financial Industry Regulatory Authority (FINRA) and the Federal Arbitration Act. [*Id.* at 10–11].

Shortly after Caldwell's employment with Wells Fargo ended, the company sought to collect the remaining balance of its loan by sending her Notices of Demand on August 19 and August 29, 2022. [*Id.* at 5]. Having no success collecting the debt, Wells Fargo filed a State of Claim in Arbitration before FINRA on March 25, 2024. [Dkt. 1 at 3]. The arbitrator found that Wells Fargo had properly notified Caldwell of the initiated arbitration proceedings three separate times—via a Claim Notification letter dated April 1, 2024; an Overdue Notice dated May 22, 2024; and a Notification of Arbitrator dated June 13, 2024. [Dkt. 1-1 at 37]. Despite these notifications, Caldwell failed to respond or participate in the arbitration proceedings, and, on June 21, 2024, the arbitrator ruled in Wells Fargo's favor, determining that Caldwell owed the company $344,097.99 plus interest at a rate of 4.84% per annum from the date of her termination. [*Id.*].

Wells Fargo filed a petition to confirm the arbitration award in this court on February 25, 2025. [Dkt. 1].

Caldwell's filings in opposition to the petition tell a very different story. [Dkt. 15; Dkt. 24]. In her version of events, Wells Fargo offered her a "forgiveable loan" that operated to defer taxes on a "transitional bonus" she earned as incentive for joining the company. [Dkt. 24 at 5]. It was not, in other words, a traditional loan she would have to pay back. Caldwell asserts that she did not execute or authorize the electronic signatures on the Promissory Note and Loan Authorization form provided by Wells Fargo. [Dkt. 24 at 8]. Rather, her assistant, without Caldwell's knowledge or approval, signed the forms in her name. [*Id.*]. In short, because the Promissory Note itself contained the arbitration agreement, Caldwell's assertion that she never signed the Promissory Note is also an assertion that an agreement between the parties to arbitrate disputes never existed.

Caldwell also contends that she had no notice of arbitration proceedings against her because Wells Fargo sent correspondence to a "former address." [*Id.* at 5].

## II.   Legal Standard

Section 9 of the Federal Arbitration Act envisions a limited role for federal courts faced with a petition for an order confirming an arbitration award—"the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the Act. 9 U.S.C. § 9. "'Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very

2

unusual circumstances.'" *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022) (quoting *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020)).

But arbitration is "strictly 'a matter of consent.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). So a court cannot confirm an arbitration award if the parties did not agree to arbitrate the dispute. See 9 U.S.C. § 9 (If the parties *in their agreement have agreed* that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award…") (emphasis added). And whether an agreement to arbitrate exists is a question for courts, not arbitrators. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 941–45 (1995) (explaining that courts, not arbitrators, decide whether a dispute is subject to arbitration before confirming an arbitration award unless the parties clearly and unmistakably agreed to have an arbitrator decide questions of arbitrability).[2]

While it is well-settled that courts decide the threshold question of whether an arbitration agreement exists, it is less clear what evidentiary standard applies in the context of a petition to confirm arbitration. See *Bezek v. NBC Universal*, 2018 WL 2337131, at *8 (D. Conn. May 23, 2018) (observing that "arbitrability is typically a question addressed in the context of a motion to compel arbitration pursuant to section 4 of the FAA," not a motion to confirm arbitration). Some courts have treated petitions to confirm arbitration as akin to motions for summary judgment. See *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). This approach makes sense. A petition to confirm arbitration, like a motion for summary judgment, usually contains a record, including the arbitration agreement itself.

Consider also an analogous procedural posture—a petition to compel arbitration. At that posture, when the existence of an agreement to arbitrate is in dispute, the FAA requires a court to conduct a trial on that issue before compelling arbitration. See 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."). And while the FAA does not speak to the evidentiary standard a party opposing arbitration must meet before the making of an arbitration agreement is at issue within the meaning of the statute, most courts, including the

---

[2] Because Caldwell denies ever receiving notice of arbitration proceedings, this case differs from instances where estoppel or waiver principles operated to bar a party from contesting the arbitrability of a dispute in collateral proceedings after failing to raise it before the arbitrator. See, *e.g.*, *Lippert Tile Co. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wisconsin & Its Loc. 5*, 724 F.3d 939, 945 (7th Cir. 2013). And the arbitrator's decision that Wells Fargo provided proper notice cannot be deemed binding until the court determines whether the parties ever agreed to arbitration in the first place.

3

Seventh Circuit, apply the standard applicable to motions for summary judgment. See *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

By analogy, then, when faced with a petition to confirm arbitration, a party denying the existence of an arbitration agreement must "demonstrate that a genuine issue of material fact warranting a trial exists." *Id*; see *Bezek*, 2018 WL 2337131, at *8 (applying the framework for determining arbitrability at the motion to compel stage when deciding arbitrability at the motion to confirm stage). This requires more than a general denial of "the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder*, 305 F.3d at 735.

### III. Analysis

Because Caldwell denies signing an agreement to arbitrate her dispute with Wells Fargo, the court must decide the threshold issue of whether such an agreement exists.

Caldwell offers three reasons the court should conclude a genuine dispute of material fact prevents a finding that the parties agreed to arbitration. First, she asserts in her filings that she did not sign or authorize her assistant to sign the Promissory Note or Loan Authorization form attached as exhibits to the petition to confirm arbitration. But she did not swear to the content of her filings in the presence of someone authorized to administer oaths. Nor did she declare her statements as true under penalty of perjury as required by 28 U.S.C. § 1746. Her bare assertions are not enough to create a genuine dispute of material fact. See *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990).

Caldwell also offers a document she electronically signed in February 2023. In that document, she explains, her electronic signature contained her middle name. She urges the court to take this as evidence that she did not sign or authorize anyone to sign the Promissory Note, which includes an electronic signature without her middle name. [Dkt. 24 at 38]. This too is insufficient. That Caldwell's electronic signature contained her middle name in February 2023 says nothing about her electronic signature in 2021. It also says nothing about whether she authorized her assistant, who may have been unaware of Caldwell's preference to include her middle name, to electronically sign on her behalf.

Finally, Caldwell points to her "offer summary" from Wells Fargo, which contains information regarding a "transitional bonus" of $343,500. [Dkt. 24 at 23]. The bonus appears to describe a scenario where Wells Fargo would pay Caldwell monthly installments of $3,359.30 for 112 months. While the court observes that the offer summary seems potentially at odds with the Promissory Note, the letter alone likely does not create a genuine dispute of fact. For starters, the offer summary is just that—an offer. Caldwell does not present evidence of an agreement to those terms

between the parties. In any event, it's possible the parties agreed to the Promissory Note *and* the offer summary.

So at this stage of the proceedings, Caldwell has likely not created a genuine dispute of material fact as to the existence of the arbitration agreement. A definitive ruling on the issue, however, would be premature. Courts, including this one, have recognized the imprudence of making a finding that an arbitration agreement exists without allowing the party opposing such finding a chance to conduct discovery on the issue. See *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 841 (6th Cir. 2021) ("Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question."); *Bradley v. Meijer Stores L.P.*, 2023 WL 3042984, at *5 (N.D. Ill. Apr. 21, 2023) (denying a petition to compel arbitration and allowing discovery when a party placed the making of an arbitration agreement "in issue" by asserting, in an unsworn statement, that he did not sign an arbitration agreement).

### IV.     Conclusion

Caldwell asserts in her filings that she can provide evidence that she did not sign the Promissory Note, and this court will allow her a chance to do so. The court defers ruling on the motion to confirm arbitration. It will first allow limited discovery on the existence of an agreement to arbitrate. Once that discovery is complete, it will schedule a trial, if necessary, which may proceed as either a bench or a jury trial. 9 U.S.C. § 4.[3]

Enter: 25-cv-1961
Date: September 19, 2025

_____
Lindsay C. Jenkins
United States District Court Judge

---

[3]     Section 4 provides in part: "[i]f no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure…." 9 U.S.C. § 4.

5