**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Wells Fargo Clearing Services, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>Helen Caldwell,<br><br>*Defendant*. | No. 25 CV 1961<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Petitioner Wells Fargo Clearing Services, LLC initiated this action to confirm an arbitration award entered in its favor against its former employee, Respondent Helen Caldwell. [Dkt. 1]. Caldwell, proceeding *pro se*, filed a motion in opposition, alleging in part that she never agreed to arbitration with Wells Fargo in the first place. Because the court may only confirm an arbitration award after finding that the parties indeed agreed to arbitrating the dispute, the court deferred ruling on the petition pending limited discovery and supplemental briefing. [Dkt. 31.] On this record, there is no genuine factual dispute that Caldwell agreed to arbitrate and, consequently, the court confirms the arbitration award.

## I. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

Local Rule 56.1 requires the moving party to file a statement of material facts with citations to specific supporting evidence in the record. L.R. 56.1(a)(2); see also L.R. 56.1(d). The opposing party must then respond to each fact by either admitting it or disputing it with its own supporting evidence. L.R. 56.1(b)(2); see also L.R. 56.1(e). The non-moving party may also file additional facts supporting its position. L.R. 56.1(b)(3). Any facts that are not properly objected to are deemed admitted. L.R. 56.1(e)(3); see also *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

Here, Wells Fargo filed a Rule 56.1 statement, and as required by Local Rule 56.2, also served Caldwell with a "Notice to Unrepresented Litigant Opposing Summary Judgment" explaining what a motion for summary judgment is and what

steps she needed to take to respond to the motion. [Dkt. 51, 52.[1]] Caldwell, for the most part, disregarded these rules. While she denied almost every one of Wells Fargo's statements of fact, she did so without any citation to supporting evidence. The same is true of her statement of additional facts. Indeed, her statement doesn't contain additional facts at all. Rather, she writes eighteen paragraphs purporting to identify documents that Wells Fargo did not produce—an exercise that is unnecessary and unhelpful to the court.

District courts have broad discretion to require strict compliance with Local Rule 56.1. *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 611 n.13 (7th Cir. 2023). Any party, including a *pro se* litigant, who fails to comply with Local Rule 56.1 does so at their own peril. *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though [employee] is a *pro se* litigant" (cleaned up)); *Parker v. Fern*, 2024 WL 1116092, at *2 (N.D. Ill. Mar. 14, 2024) ("It is well–settled that a plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules.")

Pursuant to Local Rule 56.1(e)(3), the court deems Wells Fargo's statement of facts admitted to the extent they are supported by the record evidence. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

## II. Background

On November 10, 2021, Wells Fargo employee Meghan Winchester prepared a Promissory Note for $343,500, which included a binding arbitration provision. [Dkt. 48, ¶¶ 3, 6.] She then emailed the Note to Caldwell at 4:04 PM requesting that she execute it. [*Id.*, ¶ 8.] Less than 30 minutes later, another Wells Fargo employee, Kaye Seeber, sent Winchester an email saying, "I helped Helen Caldwell fill out her contract," and "she signed it." [*Id.*, ¶ 35.] The Promissory Note bears Caldwell's DocuSign electronic signature, and the DocuSign Certificate of Completion indicates that Caldwell agreed to use DocuSign in lieu of an ink signature and that she signed the Promissory Note and Loan Payment Authorization on November 10 at 4:41 PM. [*Id.*, ¶¶ 7, 10, 12, 18, 21.]

Notably, the Certificate identifies an IP address unique to the work laptop that Wells Fargo provided to Caldwell. [*Id.*, ¶¶ 22–24.] Under Wells Fargo's computer policy, only Caldwell could access her password-protected laptop. [*Id.*, ¶ 27.] Once logged into her laptop, moreover, Caldwell could only access the onboarding documents through her own email address. [*Id.*, ¶¶ 29, 34.] And to access DocuSign, Caldwell needed to enter the last four digits of her FINRA CRD number as a passcode.

[1] After Caldwell filed a "notice of non-receipt" of a Local Rule 56.2, the court directed the parties to confer to ensure that Caldwell had received a copy of the instructions laid out in the rule. The court also explained that a copy of Local Rule 56.2 could be found on the District Court's webpage, and it provided a link to that page. [Dkt. 55.]

[*Id.*, ¶ 31.] In other words, the presence of Caldwell's DocuSign signature on the Promissory Note and Loan Payment Authorization documents required multiple levels of password-protected, user-specific processes.

Sometime after executing the Promissory Note, Caldwell submitted a voided check from her bank account to Wells Fargo so the proceeds of the Note could be wired into her account. [*Id.*, ¶ 38.] Wells Fargo then made payroll deductions pursuant to the terms of the Note throughout Caldwell's employment. [*Id.*, ¶ 44.] Caldwell never disputed those deductions. [*Id.*]

## III. Analysis

Throughout this litigation, the court made every effort to remind Caldwell of the narrow question before it: whether she agreed to arbitrate her dispute with Wells Fargo. Despite those efforts, Caldwell devotes the bulk of her brief to contesting the terms of the alleged Promissory Note and, in particular, its status as either a loan or a "transitional bonus." This argument misses the mark. For present purposes, it doesn't matter if the funds Wells Fargo provided to Caldwell were a loan or a bonus; all that matters is whether she agreed to arbitrate disputes related to the funds. If the answer is yes, then any disagreement about the status of the funds was one for the arbitrator, not this court.

As explained above, Caldwell did not properly dispute Wells Fargo's version of events, including its assertion that she signed an agreement to arbitrate disputes concerning the alleged Promissory Note. On that basis alone, the court finds no genuine dispute that Caldwell agreed to arbitrate disputes concerning the Promissory Note. But even taking Caldwell's version of events as true, the evidence shows that she agreed to arbitrate her dispute with Wells Fargo.

Caldwell denies signing an arbitration agreement specifically related to any promissory note, to be sure. She represents in her response brief that she "did not sign any Promissory Note or Loan Agreement relating to the Transitional Bonus." [Dkt. 60 at 28.] She does not, however, offer any evidence—not even her own sworn statement—to support her assertion even though the court earlier stressed the need to do so. [Dkt. 31 at 4 (observing the absence of sworn evidence and that bare assertions are not enough to create a genuine dispute of material fact) (citing *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 471 (7th Cir. 1990)).]

Now, in her response brief Caldwell indicates that she located an arbitration agreement in "her records." [Dkt. 60 at 28.] That agreement, which bears Caldwell's signature, applies to "any legal Claims arising out of [Caldwell's] application for employment, employment, or separation from employment with Wells Fargo" and defines "Claims" as, among other things, "breach of contract, promissory estoppel, expense reimbursement, wages," and "compensation." [Dkt. 69 at 16.] The existence and terms of an alleged transitional bonus is surely within that scope.

Because Caldwell agreed to arbitrate her dispute with Wells Fargo, the court turns to whether any reason exists to set aside the arbitration award.

Courts reviewing an arbitration award proceed with a light touch. "'Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances.'" *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022) (quoting *Standard Sec. Life Ins. Co. of N.Y. v. FCE Benefit Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020)). The court will uphold the arbitrator's award "so long as 'an arbitrator is even arguably construing or applying the contract and acting within the scope of this authority.'" *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013) (quoting *Local 15, Int'l Bhd. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 782–83 (7th Cir. 2007)). It will not overturn an award simply "because an arbitrator 'committed serious error,' or the decision is 'incorrect or even whacky.'" *Id*. Instead, "[t]he FAA spells out a narrow set of reasons that may support a court's confirmation, vacatur, or modification of an award." *Continental Casualty Co. v. Certain Underwriters of Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021) (citing 9 U.S.C. §§ 10–11).

Caldwell faces a threshold barrier, however. Under Section 12 of the FAA, a party seeking to modify or vacate an arbitration award must serve notice upon the adverse party of her intent to do so "within three months after the award is filed or delivered." 9 U.S.C. § 12. Caldwell's challenge to the award first arose in her answer to Wells Fargo's petition, almost a year after the arbitrator issued the decision. Caldwell urges the court to excuse her delay because she lacked notice of the arbitration proceedings. According to Caldwell, Wells Fargo sent communications regarding the arbitration to a "former address," so she never received notice of the proceedings or the decision of the arbitrator.

Caldwell is entitled to fair proceedings, including adequate notice. But federal courts defer to the arbitrator on procedural matters, and "'parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena.'" *Bartlit Beck LLP*, 25 F.4th at 522 (quoting *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1130 (7th Cir. 1997)); *First State Ins. Co. v. Banco de Seguros Del Estado*, 254 F.3d 354, 357 (1st Cir. 2001) (explaining that a "method chosen by the parties to receive notice…cannot be deemed to offend due process").

FINRA Rule 9134(b)(1) permitted service at Caldwell's "residential address, as reflected in the Central Registration Depository" or her "last known residential address." Relying on FedEx tracking information, the arbitrator determined that Wells Fargo did so. [Dkt. 1-1 at 37.] The court sees no basis to deem that decision unreasonable, so Caldwell's challenges to the award are untimely. See *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332–33 (7th Cir. 1995) (declining to vacate an arbitration award for inadequate notice where the parties agreed to abide by the American Arbitration Association rules and service was effectuated in accordance with those

rules); *Harris v. Wells Fargo Clearing Servs., LLC,* 2018 WL 6523384, at *4, *6 (S.D.N.Y. Nov. 26, 2018) (collecting cases holding that FINRA properly serves a registered representative with notice of a statement of claim if it uses the residential address she listed with FINRA and concluding that such service did not violate due process).

## IV. Conclusion

For these reasons, the court confirms the arbitration award in favor of Wells Fargo.

Enter: 25-cv-1961
Date: August 10, 2026

Lindsay C. Jenkins
United States District Court Judge